# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DELONTE EMILIANO TRAZELL, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 12-01369 (ABJ) |
| ROBERT G. WILMERS, *et al.*, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff Delonte Emiliano Trazell, proceeding pro se, filed this case against defendants Manufactory and Traders Trust Bank ("MT&T"); Robert G. Wilmers, CEO and Director of MT&T; and Michael Trayder, in his capacity as an employee of MT&T (collectively "defendants"). In his amended complaint, plaintiff alleges that defendants repossessed his vehicle on June 19, 2012, in violation of:

- the Treaty of Watertown of 1776;
- the Fourth and Fifth Amendments to the United States Constitution;
- 12 U.S.C. § 83;
- 15 U.S.C. § 1681s-2;
- 18 U.S.C. §§ 112, 1341;
- 42 U.S.C. § 1983;
- United Nations Resolution 61/295 on the Declaration of Rights of Indigenous Peoples;
- United Nations Resolution 60/147; and
- D.C. Municipal Regulations title 16, §§ 341.1, 341.3, 341.5.

Am. Compl. at 1–2 [Dkt. # 7].

Defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Defs.' Mot. to Dismiss ("Defs.' Mot.") [Dkt. # 13]; *see also* Defs.' Mem. in Supp. of Defs.' Mot. to Dimiss ("Defs.' Mem.") [Dkt. # 14]. In response, plaintiff filed a motion for summary judgment and a supplemental memorandum. Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") [Dkt. # 17]; Pl.'s Supplemental Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Supp. Mem.") [Dkt. # 23]. For the reasons stated below, the Court will grant defendants' motion to dismiss in part and deny it in part. The Court will also deny plaintiff's motion for summary judgment.

## BACKGROUND

Based on the limited information provided in the amended complaint, the Court has ascertained the following facts: Plaintiff is the registered owner of a Dodge Charger. Am. Compl. ¶ 1. On June 19, 2012, his vehicle was removed from southeast Washington, D.C., *id.* ¶¶ 1, 3(a), and MT&T employee Timothy Worrell left his business card on plaintiff's front door, *id.* ¶ 3. The vehicle is now being stored in Clinton, M.D. *Id.* ¶ 1. According to plaintiff, "[t]here is NO 'instrument of security' or 'document of title' between M & T BANKING CORP or MANUFACUTORY AND TRADERS INC. and [plaintiff]" regarding his vehicle. *Id.* ¶ 2.

Plaintiff filed suit giving rise to the instant case. In his amended complaint, plaintiff alleges that defendants violated several of his constitutional and statutory rights, international resolutions, and three District of Columbia Municipal Regulations. Defendants moved to dismiss plaintiff's amended complaint for failure to state a claim upon which relief can be granted. Plaintiff opposed the motion to dismiss and filed his own motion for summary judgment.

**STANDARD OR REVIEW**

**I. Motion to Dismiss**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 1950.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*., quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id*.

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in plaintiff's favor, and the Court should grant plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). This is particularly true where the plaintiff proceeds pro se because a pro se complaint is held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, the Court need not accept

inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). Additionally, regardless of the less stringent standard for pro se litigants, plaintiff's complaint "must present a claim upon which relief can be granted." *Wada v. U.S. Secret Serv.*, 525 F. Supp. 2d 1, 9 (D.D.C. 2007), quoting *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994) (internal quotation marks omitted).

In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted). However, where the plaintiff proceeds pro se, the Court may "consider supplemental material filed by a pro se litigant . . . to clarify the precise claims being urged." *Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007).

## II. Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). Merely identifying a fact

in dispute is not enough to preclude summary judgment, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); a dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party, and a fact is only "material" if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.

## ANALYSIS

In his amended complaint, plaintiff alleges that defendants violated his constitutional and statutory rights, international law, and D.C. Municipal Regulations by repossessing his vehicle. Defendants moved to dismiss plaintiff's amended complaint for failure to state a claim upon which relief can be granted. As described in more detail below, the Court concludes that plaintiff failed to allege enough facts in his complaint to state claims for violations of the Treaty of Watertown, the Fourth Amendment, the Fifth Amendment, 12 U.S.C. § 83, 15 U.S.C. § 1681s-2, 18 U.S.C. § 112, 18 U.S.C. § 1341, 42 U.S.C. § 1983, United Nations Resolution 60/147, United Nations Resolution 61/295, D.C. Municipal Regulation § 341.1, and D.C. Municipal Regulation § 341.3. However, the Court also finds that plaintiff did allege sufficient facts to state a claim for a violation of D.C. Municipal Regulation § 341.5 and the claim that defendants did not have a valid security interest in plaintiff's vehicle. Therefore, the Court will grant defendants' motion to dismiss in part and deny it in part.

**I.     Plaintiff failed to state a claim for violation of the Treaty of Watertown.**

The Treaty of Watertown of 1776 was the first treaty to recognize the United States as an independent nation. The Historical Society of Watertown, http://historicalsocietyofwatertown

ma.org/HSW/index.php?option=com_content&view=article&id=86&Itemid=66 (last visited Oct. 8, 2013). It was signed by "the Governors of the State of Massachusetts Bay, and the Delegates of the St. John's and Micmack Tribes of Indians." Treaty of Watertown of 1776, http://historicalsocietyofwatertownma.org/HSW/HSWdocs/treatyofwatertown.pdf (last visited Oct. 8, 2013). The treaty memorialized an agreement for peace between the recently declared independent American colonies and the St. John's and Micmack nations as well as those nations' agreement to support American rebels in the ongoing Revolutionary War against Great Britain. *Id.* Additionally, the treaty stated that, "if any robbery or outrage happens to be committed by any of the subjects . . . of the United States of America upon any of the people of said Tribes, the said State shall upon proper application being made, cause satisfaction and restitution speedily to be made to the part injured." *Id.*

In his amended complaint, plaintiff summarily states that defendants violated the Treaty of Watertown when they repossessed his vehicle. Am. Compl. at 1. Presumably in support of his claim, plaintiff indicates that he is a member of the Cherokee-Choctaw nation and attaches to his complaint a photocopy of his Indigenous Government Identification card. Ex. 1 to Compl. [Dkt. # 1-1]. Plaintiff did not provide any other facts as to why he believes that defendants violated the treaty. Granting plaintiff the benefit of the facts alleged in his amended complaint – specifically that defendants repossessed his vehicle – the Court presumes that plaintiff bases his Treaty of Watertown claim on the provision in the treaty that provides that the State will redress an injury suffered by a member of the St. John's or Micmack nations if that injury is a result of a robbery or outrage committed by a U.S. citizen.

Even granting plaintiff that inference, however, the Court concludes that plaintiff fails to state a claim for violation of the Treaty of Watertown. As alleged in the amended complaint and

6

established by plaintiff's government identification card, plaintiff is a member of the Cherokee-Choctaw nation. *Id.*; *see also* Am. Compl. at 1. He does not allege that he is also a member of either the St. John's nation or the Micmack nation, which were the only two Native American nations that signed the treaty. As a result, the Treaty of Watertown affords plaintiff no rights, and the Court therefore finds that plaintiff failed to state a claim for violation of the treaty.

II. **Plaintiff failed to state a claim for violation of the Fourth Amendment, the Fifth Amendment, and 42 U.S.C. § 1983 because he failed to assert sufficient facts to establish the state action required to trigger the protection of those provisions.**

The Fourth Amendment to the United States Constitution establishes, in pertinent part, that "[t]he right of the people to be secure in their . . . effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Its purpose is to "secure the citizen in the right of unmolested occupation of his dwelling and the possession of his property, subject to the right of seizure" through the legal process. *Burdeau v. McDowell*, 256 U.S. 465, 475 (1921). It applies only to government action, *id.*; *see also Coolidge v. New Hampshire*, 403 U.S. 443, 487–90 (1971) (analyzing whether the defendant's wife could be considered an agent of the government so as to implicate the defendant's Fourth Amendment rights), which arises when an individual acts in his or her official government capacity or where an individual, who is not officially affiliated with the government, acts as an agent of the government, *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 614 (1989) ("Although the Fourth Amendment does not apply to a search or seizure, even an arbitrary one, effected by a private party on his own initiative, the Amendment protects against such intrusions if the private party acted as an instrument or agent of the Government.").

The Fifth Amendment Due Process Clause, on the other hand, provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const.

amend. V. Like the Fourth Amendment, the Due Process Clause only applies to government action. *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948); *Comm. of U.S. Citizens Living in Nicar. v. Reagan*, 859 F.2d 929, 946 (D.C. Cir. 1988). More specifically, the Fifth Amendment Due Process Clause only applies to actions of the federal government, *see Shelley*, 334 U.S. at 13; *Comm. of U.S. Citizens*, 859 F.2d at 946, and it only applies to private action in cases where a "private party's behavior . . . [is] instigated by or dependent upon the exercise of governmental authority," *Comm. of U.S. Citizens*, 859 F.2d at 946, quoting *Franz v. United States*, 707 F.2d 582, 591 (D.C. Cir. 1983).

Finally, 42 U.S.C. § 1983 creates a civil cause of action for individuals who have been deprived of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (2012). Like the protections afforded by the Fourth and Fifth Amendments, the cause of action created by section 1983 only applies to individuals acting "'under color of' the law of a state, territory or the District of Columbia." *Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir. 1991). In other words, it only applies to those individuals working in their official state governmental capacity or to private parties that are deemed to be acting under color of state law. *See id.* "Private parties . . . may be deemed to have acted under color of law in two circumstances: when they conspire with state officials, and when they willfully engage in joint activity with a state or its agents." *Id.*; *see also Nader v. McAuliffe*, 593 F. Supp. 2d 95, 100 (D.D.C. 2009) ("Although § 1983 ordinarily does not create a cause of action related to the conduct of private parties, private conduct may be deemed to be 'under color of state law' when it is 'fairly attributable' to the state."), quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

Here, plaintiff's amended complaint names three parties as co-defendants in this case: MT&T – a privately owned bank – and two employees of that privately owned bank. Am. Compl. at 1. He does not allege any facts that suggest that defendants acted in an official government capacity when they repossessed his vehicle, nor does he allege any facts that suggest defendants were acting as an instrument of the government when they repossessed his vehicle. *See generally id.* Consequently, the Court concludes that plaintiff failed to state a claim for violation of the Fourth Amendment, the Fifth Amendment Due Process Clause, and section 1983.

### III. Plaintiff failed to state a claim for violation of the cited United States Code provisions.

In his amended complaint, plaintiff alleges that defendants violated several U.S. Code provisions. *See* Am. Compl. But plaintiff has not provided sufficient facts "to state a claim to relief that is plausible on its face" for violations of these statutes. *See Iqbal*, 129 S. Ct. at 1960; quoting *Twombly*, 550 U.S. at 570.

First, plaintiff alleges a violation of 18 U.S.C. § 112, which provides protection to foreign officials, official guests, and internationally protected persons from physical attack or imprisonment. 18 U.S.C. § 112 (2012). Even assuming that plaintiff is within the class protected by this statute, his amended complaint contains no facts that suggest that he was either physically attacked or imprisoned. Instead, the facts in plaintiff's amended complaint appear only to assert that his vehicle was wrongfully repossessed. *See* Am. Compl. Consequently, plaintiff failed to state a claim for violation of 18 U.S.C. § 112.

Second, plaintiff asserts that defendants violated 12 U.S.C. § 83 and quotes subsection (a) of that statute, which provides that "[n]o national bank shall make any loan or discount on the security of the shares of its own capital stock." 12 U.S.C. § 83(a) (2012); *accord* Am. Compl. ¶

6(a)(i). He then states that "Michael N. Trayder, M&T Bank employee sent posting stating [sic], 'there's not enough collateral to secure loan.'" Am. Compl. ¶ 6. But section 83 does not prohibit a bank from denying customers loans based on an insufficiency of collateral; instead, it prohibits a bank from using the bank's capital stock as security for loans or discounts. 12 U.S.C. § 83. Even if a violation of this provision could give rise to a private cause of action, plaintiff does not allege that the bank has used or is using its capital stock as security for loans or discounts, and he has not asserted facts that support an inference that defendants violated section 83. He therefore failed to state a claim for violation of 12 U.S.C. § 83.

Third, plaintiff alleges a violation of 15 U.S.C. § 1681s-2 and quotes subsection (a)(1)(A), which provides that "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A) (2012); *accord* Am. Compl. ¶ 5(a)(i). Although plaintiff's amended complaint flatly states that there were "(11) HARD inquiries to credit report," Am. Compl. ¶ 5, he does not allege facts that suggest that defendants knowingly provided false information about him to a credit reporting agency, nor does he even allege facts that demonstrate that defendants provided information about his credit to anyone. Thus, despite the additional facts in connection with this claim, plaintiff failed to state a claim for violation of section 1681s-2 because he failed to allege sufficient facts to create an inference that defendants violated that statute.

Fourth, plaintiff alleges a violation of 18 U.S.C. § 1341 – commonly referred to as the "mail fraud" statute – which criminalizes the use of United States Postal Service or an interstate carrier to further a fraudulent purpose. 18 U.S.C. § 1341 (2012). In support for his assertion that defendants violated this statute, plaintiff merely states "(10) post items," Am. Compl. ¶ 4, and

"when post is delivered to addressee spelled as 'PROPER NAME' under the guise to extort resources from an individual it denotes mail fraud," Pl.'s Supp. Mem. at 4. Putting aside the question of whether a private party can bring a civil action complaining of the alleged commission of this offense, plaintiff does not allege any facts that would indicate that defendants defrauded him or used the mail in furtherance of the alleged fraud. As a result, his amended complaint does not state sufficient facts necessary to make it plausible that defendants violated section 1341, and plaintiff therefore failed to state a claim for violation of that statute.

As a final point, the Court notes that plaintiff cannot rely on statutory quotes or his conclusory statements that defendants violated a statute to satisfy the pleading requirement. In *Iqbal*, the Supreme Court stated that a pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" to survive a motion to dismiss for failure to state a claim. 129 S. Ct. at 1949, quoting *Twombly*, 550 U.S. at 555. The Supreme Court also reemphasized that, when considering a motion to dismiss for failure to state a claim, the requirement that the court "accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Consequently, in order to survive a motion to dismiss, plaintiff must provide facts that support his claim that defendants violated the listed statutory provisions instead of just announcing that the provisions were violated and quoting parts of the statutes. As discussed above, plaintiff did not provide those facts. Thus, the Court finds that plaintiff failed to state a claim for relief based on alleged violations of 12 U.S.C. § 83, 15 U.S.C. § 1681s-2, 18 U.S.C. § 112, and 18 U.S.C. § 1341.

**IV.      Plaintiff failed to state a claim for violation of either United Nations resolution.**

On September 13, 2007, the General Assembly of the United Nations adopted a resolution titled "61/295. United Nations Declaration on the Rights of Indigenous Peoples."

G.A. Res. 61/295 (Sept. 13, 2007). The resolution sets forth various statements regarding the equality of indigenous populations and propounds forty-six articles listing internationally recognized rights, such as that "[i]ndigenous peoples have the right to determine the responsibilities of individuals to their communities" and "[i]ndigenous peoples have the right to redress . . . for the lands, territories and resources which they have traditionally owned or otherwise occupied or used, and which have been confiscated, taken, occupied, used or damaged without their free, prior and informed consent." *Id.* art. 28, 35. In other words, the resolution – which was officially endorsed by President Obama in 2010 – creates an expectation that members of the United Nations will maintain a certain level of respect for indigenous peoples, their culture, and their independence.

United Nations Resolution 60/147, on the other hand, sets forth basic principles and guidelines on the rights of victims of gross violations of international human rights law and international humanitarian law. G.A. Res. 60/147 (Dec. 16, 2005). Specifically, it creates the expectation that nations will respect, and ensure that others respect, international human rights law and international humanitarian law by ensuring that domestic law is consistent with international legal obligations, investigating alleged violations of international humanitarian law, and aiding in prosecution of those who violate international humanitarian law. *Id*. It also creates guidelines for redressing injuries caused by violations of international human rights and humanitarian law. *Id.*

In his amended complaint, plaintiff asserts that defendants violated both resolution 61/295 and resolution 60/147. Am. Compl. at 2, 4. The first problem with these allegations is that the resolutions are meant to govern the conduct of nations, not private parties. And there are serious questions as to whether one can bring a civil action to enforce the resolutions. But even if

these hurdles could be surmounted, plaintiff provides no facts in support of these claims. He states that, under "UN 61/295 ARTICLE 25[,] Indigenous peoples have the right to the lands which they have traditionally owned, occupied or otherwise acquired," *id.* at 4, and he appears to include his vehicle in that category, *see id.* But plaintiff's conclusory statements that defendants repossessed his vehicle and violated the two UN resolutions do not satisfy the pleading requirements under *Twombly* and *Iqbal*. *See Iqbal*, 129 S. Ct. at 1949, quoting *Twombly*, 550 U.S. at 555.[1] There is no indication in the complaint that plaintiff's vehicle would fall within the protection of the resolutions.

Moreover, plaintiff has not provided any facts indicating that, even if a UN resolution protects his vehicle from repossession, the vehicle was unlawfully taken in a manner that violates the expectation that the State "give legal recognition and protection to these lands, territories and recourses." G.A. Res. 61/295 at art. 26. In other words, plaintiff does not – and likely cannot – set forth facts indicating that his vehicle is a resource traditionally owned by Cherokee-Choctaw natives or that defendants' taking of the vehicle amounted to the type of forced government taking of the lands and natural resources that led to the adoption of resolution 61/295. Finally, plaintiff makes no attempt to explain or provide facts in support of his claim that the repossession of his vehicle violates international human rights law or international humanitarian law, thereby triggering the protection of UN resolution 60/147. Consequently, the Court concludes that plaintiff failed to state a claim for violation of UN resolution 61/295 or UN resolution 60/147.

---

1   In his amended complaint, plaintiff actually refers to article 25 of UN resolution 61/295. *See* Am. Compl. at 4. However, the language he then provides regarding the right of indigenous peoples to lands they have traditionally owned is actually found in article 26. Therefore, the Court presumes that plaintiff intended to refer to article 26, not article 25, which provides that "[i]ndigenous peoples have the right to maintain and strengthen their distinctive spiritual relationship." G.A. Res. 61/295 at art. 25.

**V. Plaintiff failed to state a claim for violation of D.C. Municipal Regulation title 16, §§ 341.1, 341.3.**

Section 341 of Title 16 of the D.C. Municipal Regulations sets forth the duties of a holder upon repossession of a vehicle. Specifically, it provides – among other things – that, if the default leading to repossession "consists solely of the buyer's failure to make one (1) or more installment payments due under the instrument of security, and the default is not more than fifteen (15) days past due, then the holder must deliver," at least "ten (10) days before any motor vehicle is repossessed, . . . a written notice of the holder's intention to repossess the vehicle." D.C. Mun. Regs. tit. 16, §§ 341.1, 341.3 (2013).

In his amended complaint, plaintiff appears to assert that defendants did not abide by the requirements of section 341 when they repossessed his vehicle. Specifically, he quotes the regulatory language from sections 341.1 and 341.3. Am. Compl. ¶¶ 1(a)(i), 2(a)(i), 3(a)(i)(1). He then states that he is the "registered owner of motor vehicle DODGE CHARGER," that the vehicle is "now unlawfully stored" in Clinton, M.D., and that he discovered his vehicle was missing on June 19, 2012. *Id.* ¶ 1. He also states that "[t]here is NO 'instrument of security' or "document of title' between M & T BANKING CORP or MANUFACTORY AND TRADERS INC. and [him]," *id.* ¶ 2, that "M&T BANK Agent Timothy Worrell left his business card on [plaintiff's] door," *id.* ¶ 3, and that the removal occurred in southeast Washington, DC, *id.* ¶ 3(a). Finally, plaintiff asserts that defendants never went through the civil process required to repossess his vehicle. *Id.* at 4.

Despite the regulatory language he quotes and the facts he provides, plaintiff failed to state a claim for violation of those regulations. As discussed above, quoting regulatory language and making conclusory statements that a law is violated, without facts supporting that inference, does not satisfy the pleading requirements. *Iqbal*, 129 S. Ct. at 1949. Although plaintiff claims

14

that his vehicle was unlawfully repossessed, he does not provide facts to support the legal determination that his vehicle was *unlawfully* repossessed. For example, plaintiff does not assert that, at the time his vehicle was repossessed, his payments were either not in default or were in default for fifteen days or less. As a result, plaintiff failed to establish that the notice requirement set in section 341.1 is mandatory as applied to his case. Moreover, even if plaintiff did set out sufficient facts to establish that notice was required, he still did not assert the facts necessary to state a claim for violation of section 341.1 and section 341.3 because he failed to assert that defendants did not comply with the notice requirement in section 341.1. Therefore, plaintiff did not provide the facts necessary to infer that defendants violated the requirements established in sections 341.1 and 341.3, and the Court finds that he failed to state a claim for violation of D.C. Municipal Regulation §§ 341.1, 341.3.

## VI. Plaintiff stated a claim for violation of D.C. Municipal Regulation § 341.5.

In addition to his other D.C. Municipal Regulation claims, plaintiff asserts that defendants violated section 341.5 of title 16. That section provides:

> For fifteen (15) days after the notice required by § 341.4 has been delivered personally or mailed, the holder shall retain or store the repossessed motor vehicle in the District or the state and county in which the consumer resides or the state and county where it was located and repossessed. During this period the buyer may redeem the motor vehicle and become entitled to take possession of it.

D.C. Mun. Regs. tit. 16, § 341.5 (2013). Unlike his other claims, plaintiff makes the express, factual statement that defendants violated this provision by stating that "[t]he vehicle repossession occurred within the District of Columbia and immediately stored in Maryland [sic]." Pl.'s Supp. Mem. at 7. He therefore provides sufficient facts for the Court to find that it is plausible that defendants violated section 341.5's fifteen day requirement.

15

It is true that this assertion appears in Plaintiff's Supplemental Memorandum in Support of his Motion for Summary Judgment and not his complaint. But because plaintiff is proceeding pro se, this Court may consider supplemental filings in order to determine whether a motion to dismiss is warranted. *See Greenhill*, 482 F.3d at 572. Consequently, based on plaintiff's factual allegation, which the Court must accept as true at the motion to dismiss stage, the Court concludes that plaintiff has asserted sufficient facts to state a claim for violation of section 341.5. But, the Court cautions that this holding does not express any view on the merits of the claim.

### VII. Plaintiff stated a claim that defendants repossessed his vehicle without a valid security interest in that vehicle.

Plaintiff's last claim asserts that defendants acted unlawfully when they repossessed his vehicle because "[t]here is NO 'instrument of security' or 'document of title' between M & T BANKING CORP or MANUFACTORY AND TRADERS INC. and [plaintiff]." Am. Compl. ¶ 2. Without a valid security interest, defendants would have no lawful interest in plaintiff's vehicle, and repossession of that vehicle would be unlawful. Thus, plaintiff has asserted sufficient facts for this Court to conclude that it is plausible that defendants acted unlawfully when they repossessed plaintiff's vehicle, and the motion to dismiss the claim will be denied. Once again, though, the Court notes that this is not a determination that the repossession *was* unlawful.

### VIII. Plaintiff is not entitled to summary judgment on his remaining claims.

Because the Court finds that plaintiff failed to state claims for the violation of the Treaty of Watertown, the Fourth Amendment, the Fifth Amendment, 12 U.S.C. § 83, 15 U.S.C. § 1681s-2, 18 U.S.C. § 112, 18 U.S.C. § 1341, 42 U.S.C. § 1983, United Nations Resolution 60/147, United Nations Resolution 61/295, D.C. Municipal Regulation § 341.1, and D.C. Municipal Regulation § 341.3, those claims are dismissed and plaintiff's motion for summary

judgment on those counts will be denied as moot. Additionally, although plaintiff successfully stated a claim for violation of D.C. Municipal Regulation § 341.5 and a claim that defendants did not have a valid security interest in his vehicle, the Court finds that the entry of summary judgment on these claims would be premature and inappropriate. Therefore, plaintiff's motion as to those counts will be denied without prejudice.

In order for the Court to grant summary judgment, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Therefore, the non-movant may defeat summary judgment by "designat[ing] specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted). Here, a genuine issue of material fact exists with respect to both of plaintiff's remaining claims.

Again, plaintiff claims that defendants violated D.C. Municipal Regulation § 341.5 because, as he alleges, his vehicle was immediately removed from the District of Columbia upon its repossession. Pl.'s Supp. Mem. at 7. Defendants have responded with evidence that the vehicle was not removed until after the required fifteen day period. Nowicki Decl. ¶ 8 [Dkt. # 19-1]. This disagreement about when defendants removed the vehicle gives rise to a genuine dispute about a material fact and defeats plaintiff's motion.

Similarly, summary judgment is inappropriate with regard to plaintiff's claim that defendants did not have a valid security interest in his vehicle. Unlike at the motion to dismiss stage, the Court may consider other filings in addition to the pleadings, such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); *see also Anderson*, 477 U.S. at 247. Additionally, in assessing a party's motion for summary judgment,

"[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein*, 709 F. Supp. 2d at 65, citing *Anderson*, 477 U.S. at 247. Here, plaintiff claims that there is no valid security agreement giving defendants a security interest in his vehicle. Am. Compl. ¶ 2. Defendants rebutted this statement by filing both a declaration stating that a valid security interest exists, Nowicki Decl. ¶ 7, and a copy of the retail sales contract that purportedly creates the security interest, Ex. A to Nowicki Decl. [Dkt. # 19-1].[2] Consequently, there is a genuine dispute of material fact that precludes a grant of summary judgment in plaintiff's favor on his claim that defendants repossessed his vehicle without a valid security interest.

---

2  The Court notes that, even though defendants filed a copy of the retail sales agreement – which is enough to create a genuine issue of material fact as to the existence of the security interest – MT&T's relationship and connection to the retail sales contract is unclear.

## CONCLUSION

For the reasons set forth above, the Court will grant defendants' motion to dismiss plaintiff's claims for violation of the Treaty of Watertown, the Fourth Amendment, the Fifth Amendment, 12 U.S.C. § 83, 15 U.S.C. § 1681s-2, 18 U.S.C. § 112, 18 U.S.C. § 1341, 42 U.S.C. § 1983, United Nations Resolution 60/147, United Nations Resolution 61/295, D.C. Municipal Regulation § 341.1, and D.C. Municipal Regulation § 341.3 . However, it will deny defendants' motion to dismiss with respect to plaintiff's claims that defendants violated D.C. Municipal Regulation § 341.5 and that defendants acted without a valid security interest in his vehicle. The Court will also deny plaintiff's motion for summary judgment as to all claims. This leaves the Court with two state claims and a question about the existence of its subject-matter jurisdiction now that all federal questions have been dismissed. As a result, the Court will further order the parties to file supplemental briefs addressing that issue. A separate order will issue.

/s/ Amy B Jackson

AMY BERMAN JACKSON
United States District Judge

DATE: October 11, 2013